UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-61027-CIV-LENARD

TRADEWINDS ENGINE
SERVICES, LLC,

      Plaintiff,

v.

IAE INTERNATIONAL AERO
ENGINES AG,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS COUNTS I, II AND III OF PLAINTIFF'S  AMENDED COMPLAINT AND MOTION TO STRIKE PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS PURSUANT TO FLA. STAT. SECTION 57.105

      Presently pending before the Court is Defendant's Motion To Dismiss Counts I, II and III of Plaintiff's Amended Complaint and Motion to Strike Plaintiff's Request for Attorney's Fees and Costs Pursuant to Fla. Stat. Section 57.105 (DE # 7).  This motion is referred to the undersigned United States Magistrate Judge (DE # 8).  Plaintiff has responded in opposition (DE # 20).  Defendant has replied (DE # 30).  For the reasons stated below, it is recommended that the Motion to Dismiss be GRANTED, without prejudice, as to Counts I and II, and DENIED as to Count III; and the Motion to Strike be GRANTED.

## I.  BACKGROUND

      This matter was initiated when Plaintiff, Tradewinds Engine Services, LLC, ("Tradewinds") filed a Complaint in the Circuit Court of the 17th Judicial Circuit In and For Broward County against Defendant IAE International Aero Engines AG, ("IAE") seeking damages related to the purchase of an airplane engine.  The Amended

Complaint advances four causes of action as follows: Negligent Misrepresentation (Count I), Fraudulent Inducement (Count II), Promissory Estoppel (Count III), and Tortious Interference (Count IV). Defendant removed the matter to this Court (DE # 1) and thereafter filed the presently pending Motion to Dismiss, seeking to dismiss Counts I, II and III of Plaintiff's Amended Complaint (DE # 7).  Defendant also seeks to strike Plaintiff's request for Attorney's Fees and Costs pursuant to Florida Statute § 57.105.

The following facts are taken from Plaintiff's Amended Complaint which the undersigned accepts as true for purposes of resolving the instant Motion to Dismiss:

IAE is the manufacturer of the IAE Engine, Model Number V2527-A5, serial number V11449 ("the Engine"), which is the subject of this lawsuit (DE # 11, ¶¶ 10-11).  At some point in 2007, Plaintiff Tradewinds was informed by MTU Maintenance, a maintenance and repair organization for airplane engines and a partner of Defendant IAE ("MTU"), that the subject Engine was for sale by Royal Aero Service, GmbH, the then-current owner of the Engine (DE # 11 ¶¶ 10, 21, 22).  Tradewinds investigated the history of the Engine and was advised that there had been fire damage to the Engine.  During February of 2007, an IAE employee inquired of another IAE employee about how to "categorize" the Engine as to "further usage" (DE # 11 ¶ 16). The latter IAE employee indicated that he did not have the experience to comment on the Engine's suitability for further usage.  However, at no point during this time did an IAE employee object to MTU having the engine brought back to serviceability (DE # 11 ¶ 18).  Later, two other IAE employees discussed the suitability of putting the engine back to re-use (DE # 11 ¶ 20), and suggested that the Engine be serviced by another company with the goal being to place the engine back into serviceability (DE # 11 ¶ 21).  Thus, without any objection from IAE, MTU prepared a work plan to return the engine to serviceability (DE # 11 ¶ 26).

2

Sometime thereafter, Tradewinds "became aware of the efforts described above which had been undertaken to begin to return the Engine to serviceability and as a potential purchaser of the Engine, verified them with IAE." (DE # 11 ¶ 27).   Based upon those actions, Tradewinds decided to purchase the engine from Royal Aero Service, GmbH, for several million dollars (DE # 11 ¶ 29).   However, over the course of the next several months, IAE changed its position several times on the possibility of returning the Engine to serviceability (DE # 11 ¶¶ 38-40, 46-57).   Eventually, in March of 2008, after Tradewinds had invested millions of dollars into the purchase and attempted restoration of the Engine, IAE began to prepare a public service bulletin declaring that the Engine was "scrap".   The project was then put on hold by MTU (DE # 11 ¶ 45).   After IAE again changed its position regarding the Engine's serviceability, MTU completed its work on the Engine in July 2008 (DE # 11 ¶¶ 48-58).   Finally, in May of 2009, after IAE's continued interference with the certification of the restored Engine, Tradewinds was informed by IAE's partner, Rolls Royce, that IAE had issued a worldwide statement that the Engine was "untouchable" (DE # 11 ¶ ¶ 58, 59).   IAE's announcement rendered Tradewind's Engine worthless (DE # 11 ¶ 60).   Through the course of investigation of the matter, Tradewinds learned that as early as 2007, IAE had secretly determined that it would declare the Engine as "scrap" and as incapable of being repaired (DE # 11 ¶¶ 61-64).

Based upon IAE's actions, Tradewinds filed the instant matter, which Defendant now seeks to have dismissed, in part.

## II.  POSITIONS OF THE PARTIES

### A.  Defendant's Motion to Dismiss

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), Defendant seeks to dismiss Counts I, II and III of Plaintiff's Amended Complaint, which assert claims for

Negligent Misrepresentation, Fraudulent Inducement and Promissory Estoppel, respectively (DE # 7).  Defendant also asserts that Plaintiff's request for attorney's fees is improper, and thus seeks to strike that request pursuant to Federal Rule of Civil Procedure 12(f).  Defendant, however, does not seek to dismiss Count IV of Plaintiff's Complaint, which alleges Tortious Interference.

In its Motion to Dismiss, Defendant asserts that Plaintiff has failed to properly allege the fraudulent actions of Defendant in the Fraudulent Inducement count as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Defendant argues that Plaintiff's recitation of facts in the Amended Complaint does not provide details of the particular fraudulent actions but rather paraphrases excerpts of "alleged documents" which Plaintiff fails to attach to the Amended Complaint.  Defendant asserts that such allegations are too vague to provide the essential foundation for a fraud claim and specifically contends that the facts set forth fail to allege how the statements made by Defendant were false and fail to demonstrate how those statements induced Plaintiff to purchase the engine at issue.

Defendant also asserts that, for the same reasons that Plaintiff failed to properly allege the elements of fraudulent inducement, Plaintiff has also failed to set forth the misrepresentation allegations with the requisite specificity to withstand a motion to dismiss the  negligent misrepresentation claims.

Further, Defendant contends that Plaintiff fails to properly assert a promissory estoppel claim because Plaintiff has failed to identify an enforceable promise made by the Defendant.  Specifically, the alleged promise is lacking definite time, term, reasonableness and substance.

Finally, Defendant asserts that Plaintiff has failed to comply with the safe-harbor

provisions of Florida Statute § 57.105, and thus argues that Plaintiff's claim for Attorney's Fees and Costs pursuant to that section should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

**B. Plaintiff's Response**

In Response to Defendant's Motion to Dismiss, generally, Plaintiff asserts that it has alleged all of the requisite elements and facts for each of the causes of action that Defendant seeks to have dismissed.  Plaintiff contends that Defendant has improperly confused the burden of proof at trial with the burdens of allegations in the pleading stages of litigation and insists that it has more than satisfied its burden for purposes of defeating a motion to dismiss.  Specifically, Plaintiff maintains that, in the Amended Complaint, it has set forth facts in great detail which support its claim that Defendant knowingly made misrepresentations regarding the Engine to induce Plaintiff to purchase the Engine.  In addition, Plaintiff asserts that under the Federal Rules of Civil Procedure, it does not have to attach documents to its Complaint in order to defeat a motion to dismiss.

**III.  LAW & ANALYSIS**

**A.  Applicable Law**

With respect to a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, it is well-settled that in order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."   At the Motion to Dismiss stage of the litigation, a court must consider the allegations contained in the plaintiff's complaint as true, although this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), the Supreme

5

Court explained the pleading requirements which must be met in a Complaint if it is to survive a motion to dismiss.  The Court emphasized that the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 1949.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*. (citation omitted).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense.

Further, the undersigned notes that jurisdiction in this matter is predicated upon diversity, and thus the law of the state of Florida governs Plaintiff's claims in this case. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (holding in diversity jurisdiction case, courts apply the substantive law of the state in which the case arose).  However, even in diversity cases, the pleading requirements, which are procedural in nature, are set forth in the Federal Rules of Civil Procedure.  With these legal precepts in mind, the Court turns to the Defendant's Motion to Dismiss.

B.  Fraudulent Inducement

Defendant first moves to dismiss Count II of Plaintiff's Amended Complaint which

6

alleges Fraudulent Inducement.  Under Florida law, to state a claim for fraudulent

inducement, a complaint must allege sufficient facts showing that: (1) Defendant made a

false statement concerning a material fact; (2) Defendant knew the misrepresentation

was false; (3) Defendant intended the misrepresentation to induce Plaintiff's reliance;

and (4) Plaintiff was injured by his reliance on the misrepresentation.[1]  *Azar v. National*

*City Bank*, 382 Fed. Appx. 880 (2010) *(citing Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d

1294, 1315 (11th Cir. 2007)); *Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.,*

903 So.2d 251, 255 (Fla. Dist. Ct. App. 2005).

In addition, Federal Rule of Civil Procedure 9(b) requires, "In alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or

mistake. Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally."  As stated by the Eleventh Circuit in *Ziemba v. Cascade Int'l, Inc.*, 256

F.3d 1194, 1209-10 (11th Cir. 2001), "The particularity rule serves an important purpose in

fraud actions by alerting defendants to the 'precise misconduct with which they are

charged' and protecting defendants 'against spurious charges of immoral and fraudulent

behavior.' " *(citing Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir.

1988) (*quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791

(3d Cir. 1984)).  Thus, Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what

statements were made in what documents or oral representations or what omissions

were made, and (2) the time and place of each such statement and the person

responsible for making (or, in the case of omissions, not making) same, and (3) the

---

[1] In its Opposition to Defendant's Motion to Dismiss, Plaintiff agrees that
Defendant properly set forth the elements necessary to state a claim under Florida law
for fraudulent inducement (DE # 20 at 18).

content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id. citing Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997) (internal quotation omitted).  However, the application of Rule 9(b), must not abrogate the concept of notice pleading, that is set forth in Rule 8(b). *Id*.

In the instant case, Plaintiff's claim for fraudulent inducement is insufficient because it fails to properly plead the requirements of that cause of action.  First, in the Amended Complaint, Plaintiff fails to set forth facts which indicate that any false statements made by IAE were made with the purpose of inducing Plaintiff to purchase the Engine at issue, nor does it allege when Plaintiff became aware of such statements. Rather, Plaintiff alleges that in February of 2007, employees of IAE internally discussed whether the Engine was appropriate for further use after the engine had been placed with one of IAE's partners, MTU.  Plaintiff does not allege that the internal statements were made publically or directly to Plaintiff but instead claims, "At no time did IAE object to the Engine being brought back to serviceability by its partner MTU, rather IAE simply did not have the time to work on the project directly." (DE # 11 ¶ 18).[2]  Plaintiff further alleges that an employee of IAE later advised MTU of "essentially the same thing" (DE # 11 ¶ 19).  In addition, Plaintiff states, "If IAE would have advised at this stage that it was taking the position that the Engine was scrap or otherwise unfit for service, the Engine would have had little or no value and Tradewinds would have never been interest in

---

[2]  The undersigned notes that in Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff reiterated the facts set forth in a portion of Plaintiff's Amended Complaint, but changed the caption of IAE's February 2007 alleged actions from "IAE's First Position (February 2007)" to "IAE's First *Public* Position (February 2007)." (emphasis added).  There is no indication in the Amended Complaint that IAE directly made any public statements related to the serviceability of the Engine.

pursuing it." (DE # 11 ¶ 24). Thus, IAE's alleged affirmative statements concerning the Engine were made either internally between IAE employees or to MTU employees. Plaintiff has failed to allege that under either of those scenarios IAE made the statements regarding the Engine to induce Plaintiff to purchase the Engine. *See e.g. Birdsong v. Ehlke*, 2010 WL 514774 *2 (N.D. Fla. Dec. 13, 2010) (dismissing complaint pursuant to Rule 9(b) where litigant failed to set forth details concerning what action defendant's misrepresentation was intended to induce).

Rather, the only allegation in the Amended Complaint which references any statements made by IAE, which arguably support a claim that IAE made the statements with the intent to induce Tradewinds to purchase the Engine, is contained in paragraph 27 of the Complaint, which states, "Tradewinds became aware of the efforts described above which had been undertaken to begin to return the Engine to serviceability and as a potential purchaser of the Engine, verified them with IAE." (DE # 11 ¶ 27).

However, even assuming that this statement satisfies the claim that IAE made false statements to induce Plaintiff to purchase the Engine, this allegation suffers from the more fatal flaw of failing to provide the specificity regarding any false statements as required by Rule 9(b).  Specifically, the allegation fails to state when and where any statements were made, which IAE employee made any such statements, and to which Tradewinds employee any statements were made.[3]  Further, this allegation even fails to

---

[3] The undersigned recognizes that some of Plaintiff's allegations sound in fraud or misrepresentation by omission, i.e. Defendant's failure to state its true intention with regard to the Engine (DE # 11 ¶ 64).  However, Rule 9(b) requires that fraud claims based upon omissions also be plead with specificity. *See Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808 *2  (S.D. Fla. May 4, 2010) (citing *Ziemba v. Cascade, Int'l Inc.*, 256 F. 3d 1194, 1202 (11th Cir. 2001)).  Thus, any claims made by Plaintiff based upon Defendant's omissions still lack the requisite specificity to defeat the Motion to Dismiss.

identify what exactly "was verified" by Tradewinds regarding the Engine, and when this "verification" occurred vis-a-vis Tradewinds' purchase of the engine.  Thus, it is unclear whether IAE allegedly verified that MTU was undertaking steps to return the Engine to serviceability, which, even under Plaintiff's version of the facts, would be a true statement, or that IAE would not seek to have the Engine declared as scrap.[4]

Courts have consistently found that these types of vague allegations, which fail to provide the who, what, when and how of the alleged misstatements, are insufficient to satisfy the particularity requirement of Rule 9(b).  In *Linville II v. Ginn Real Estate Comp., LLC.*, 697 F. Supp 2d 1302, 1308 n. 3 (M.D. Fla. 2010), for example, the Court noted in dismissing a Plaintiff's claims for fraud related to purported misrepresentations made by a lender, that the "Plaintiff's fraud claims lack the requisite particularity under Rule 9(b) because, *inter alia*, they do not contain the identify of the speaker or any reference to time or place."   The Court reached a similar conclusion regarding plaintiff's fraudulent inducement claims in that matter because plaintiff failed to identify which loan officer made certain representations to the plaintiff, when the statements were made and where the statements were made, or any other facts from which the Court could infer an intent by the defendant to induce reliance. *Id.* at 1308. *Accord Autonation, Inc. v. Gainsystems, Inc.*, 2009 WL 1941279 *9 (S.D. Fla. 2009) (dismissing fraud claims where plaintiff failed

---

[4] The cases cited by Defendant in support of its argument that Plaintiff has failed to demonstrate that the statements made by Defendant were in fact false (DE # 7 at 7), are procedurally distinguishable from the instant matter, as both of those cases were not decided at the motion to dismiss stage of the litigation. *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F. 3d 734 (11th Cir. 1995) and *Eclipse Medical, Inc., v. American Hydro-Surgical Instruments*, 262 F. Supp. 2d 1334, 1341 (S.D. Fla. 1999) (granting defendant's summary judgment motion).  For purposes of resolving the instant Motion, the undersigned need not reach and makes no determination as to whether Defendant's purported statements were, in fact, false.

to identify "precisely" what statements were made in what documents or oral representations, the time and place of each such statement and person responsible for making such statement and content of such statement); *AKZO Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.,* 2010 WL 2821950 *3 (M.D. Fla. July 16, 2010) (dismissing counterclaim where litigant failed to identify specifically who made alleged misrepresentation); *Bruggemann v. Amacore Group*, 2010 WL 2696230 *6 (M.D. Fla. July 6, 2010) (dismissing fraud in the inducement claim where plaintiff failed to provide particularity regarding misrepresentations).

This Court is faced with the same difficulty as the Court in *Lin*ville, in that there is not enough specific information in the Plaintiff's Amended Complaint regarding Defendant's fraudulent statements from which the Court may infer any intent by the Defendant to induce Plaintiff's reliance in this matter.  In an effort to avoid this conclusion, Plaintiff points to the detailed allegations contained in its Amended Complaint, which Plaintiff claims satisfy the criteria required for fraud allegations.[5]  In addition, Plaintiff contends that Defendant has improperly confused the burden of proof at trial with the burdens of allegations in the pleading stages of litigation. Thus, Plaintiff asserts that it has more than sufficiently satisfied its burden for purposes of defeating a motion to dismiss.

The Court disagrees.  Although a plaintiff is not expected to actually prove his allegations in order to meet the Rule 9(b) particularity requirement, he must offer more than "mere conjecture." *Id*. at 1313.  A plaintiff cannot allege fraudulent conduct in a

---

[5]  To the extent that Plaintiff has alleged additional facts in its Opposition to the Motion to Dismiss that are not contained in the Amended Compliant, the Court has disregarded those facts and relied solely on the facts as averred in the Amended Complaint.

generalized manner, rather a complaint must contain specific allegations with respect to each defendant. *See, e.g.*, *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir.2007).

In this case, there is no question that the Plaintiff's pleading contains relatively detailed facts regarding the various positions allegedly taken by Defendant throughout the course of MTU's efforts to return the Engine to serviceability.  However, wholly lacking from those allegations are the particular details of the facts underlying its fraud allegations, which as discussed above, courts have held must be supplied at the pleading stages of the litigation and not just at trial.[6]  Thus, Plaintiff's claim predicated on fraudulent inducement should be dismissed. [7]

However, the Court is unable to conclude that there are no specific facts which Plaintiff could provide in this case that would satisfy the fraud pleading standard. Generally, a party should be given at least one opportunity to amend before the district court dismisses a complaint with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). However, the court need not "allow an amendment (1) where there has been

---

[6]  Moreover, although the "titles" which set forth time frames and precede various allegations are a useful guide in reading the Complaint, they are not numbered allegations in the Complaint and do not suffice to set forth the dates in which the activities took place.

[7]  The undersigned concludes that Defendant's citation to *Butler v. Magellan Health Services, Inc.*, 101 F. Supp. 2d 1365 (M.D. Fla. June 20, 2000), for further support that Plaintiff's claims are deficient due, in part, to the Plaintiff's failure to attach documents referenced in the Amended Complaint is inapposite to the instant action. *Butler* was a qui tam action where the plaintiff had already been given one opportunity to amend his complaint, yet failed to specifically plead one occurrence of a false claim, and thus the court found the plaintiff's failure to present even one document that supported the plaintiff's false claim allegations to be "conspicuous." *Id.* at 1369.  More importantly, as noted by Plaintiff in its Response to the Motion to Dismiss, there is no requirement under the Federal Rules of Civil Procedure that Plaintiff submit documents in support of its claims.

undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.*  In this case, although Plaintiff has filed an Amended Complaint, that pleading was filed in state court prior to the action being removed to this Court. In addition, there is no indication that the Plaintiff has caused undue delay in this matter or that the Defendant will be prejudiced by such an amendment.  Therefore, Plaintiff's fraud in the inducement claim should be dismissed without prejudice with a brief leave for Plaintiff to file a Second Amended Complaint, to address the deficiencies related to that claim.

C.      Negligent Misrepresentation

Defendant also seeks to dismiss Plaintiff's negligent misrepresentation claim.  To prove a claim for negligent misrepresentation, a plaintiff must demonstrate: (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation. *Wallerstein v. Hospital Corp. of America*, 573 So.2d 9, 10 (Fla. 4th Dist. Ct. App. 1990).[8]  In addition, claims for negligent misrepresentation sound in fraud, and thus Plaintiff's claims in this area are subject to the same particularity requirements as its fraud claims under Federal Rule of Civil Procedure 9(b). *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir.1993).

---

[8]  In it Opposition to Defendant's Motion to Dismiss, Plaintiff agrees that Defendant properly set forth the elements necessary to state a claim under Florida law for negligent misrepresentation (DE # 20 at 3).

Thus, for the same reasons discussed above related to Plaintiff's claim for fraudulent inducement, Plaintiff's claims for negligent misrepresentation are insufficient as pled and Defendant's Motion to Dismiss should be granted on this claim.

D.    **Promissory Estoppel**

Defendant also asserts that Plaintiff's promissory estoppel claim should be dismissed.  To state a cause of action for promissory estoppel, the plaintiff is required to allege facts that, if taken as true, would show (1) that the plaintiff detrimentally relied on a promise made by the defendant, (2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person, and (3) that injustice can be avoided only by enforcement of the promise against the defendant. *W.R. Grace & Co. v. Geodata Services, Inc.*, 547 So.2d 919, 924 (Fla. 1989).[9]

At the outset, it is worth noting that promissory estoppel claims do not require allegations of fraud or other misrepresentations, but rather are predicated primarily upon a party's reliance upon a promise.  Thus, unlike Plaintiff's fraud in the inducement and negligent misrepresentation claims, Plaintiff's cause of action predicated upon

_____

[9]  In it Opposition to Defendant's Motion to Dismiss, Plaintiff agrees that Defendant properly set forth the elements necessary to state a claim under Florida law for promissory estoppel (DE # 20 at 18).   In Plaintiff's Amended Complaint, however, Plaintiff sets forth the Promissory Estoppel elements as recited in the Restatement (Second) of Contracts § 90 (1979), which describes promissory estoppel as "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."  In the instant matter, the viability of Plaintiff's Promissory Estoppel Claim remains the same under both descriptions of the requisite elements.

promissory estoppel as alleged in the Amended Complaint is sufficient to withstand Defendant's Motion to Dismiss. Specifically, in the Amended Complaint, Plaintiff alleges that (1) Defendant IAE made a representation that it would not comment one way or the other on the serviceability of the Engine; (2) that IAE knew that and should have expected that Tradewinds would reasonably rely upon that representation; and (3) the only way for injustice to be avoided is if the court enforces IAE's representation regarding the serviceability of the Engine.  Thus, in essence Plaintiff asserts that Defendant promised that it would not interfere with the return of the Engine to serviceability, later changed its position by declaring that the Engine was "scrap," and that Plaintiff was damaged by its reliance on Defendant's initial promise because Plaintiff purchased the engine and paid for repairs to return the Engine to serviceability, before it was declared scrap and rendered worthless on the market.

        In its Motion to Dismiss, Defendant does not challenge Plaintiff's claims for promissory estoppel as failing to provide specificity as to the details of when or where the promises were made, but rather Defendant asserts that to the extent that IAE made any statements or representations, they are unenforceable because those promises were not definite to either terms, time, reasonableness and substance.  For support of its position, Defendant cites to *Bankers Trust Co. v. Basciano*, 960 So. 2d 773 (Fla. 5th Dist. Ct. App. 2007) and *W.R. Grace & Co. v. Geodata Services, Inc.,* 547 So. 2d 919 (Fla. 1989), as examples of when Florida Courts have rejected promissory estoppel claims due to lack of sufficiently definite terms.   However, Defendant's reliance on those cases is misplaced.  In particular, in *Bankers Trust Co.,* the reviewing court affirmed a trial court's dismissal on summary judgment of a promissory estoppel claim where the only "promise" was to restructure a loan.  In addition, to the extent that Defendant herein

**15**

cites to *Bankers Trust Co.* for the need for definite terms, the case did not examine the need for definite terms in the promissory estoppel context, but rather analyzed the need for definite terms in contract formation.  *Id.* at 777.  The elements required for the formation of a contract are not the same as the elements required to state a claim for promissory estoppel.  Indeed, as stated by the Court in *Uphoff v. Wachovia Sec., LLC.*, 2009 WL 5031345 * 4 (S.D. Fla. 2009), "Promissory estoppel does not turn on mutual assent to be bound in the same way as a contract claim. Rather, the essence of promissory estoppel is detrimental reliance . . . Significantly, the doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." (Citations and internal quotations omitted).

In addition, Defendant cites to specific language in *W.R. Grace* as limiting the application of promissory estoppel claims to oral representations regarding future rights, but omits the exact language from the passage which expressly alludes to the fact that a written contract with specific terms existed between the parties in that action. *W.R. Grace*, 547 So. 2d at 925.  Such a written contract is not alleged to have existed in this case, and thus the concerns identified by the Florida Supreme Court in that case regarding promissory estoppel claims simply are not present in the case at bar.

Thus, although Defendant is correct that Florida Courts have rejected promissory estoppel claims where the alleged promise is entirely indefinite as to terms and time, under the facts of the instant case, the Plaintiff's allegations are sufficiently definite at the motion to dismiss stage for purposes of promissory estoppel claims: Plaintiff alleges that Defendant IAE represented that it would not interfere with the return to serviceability of the Engine, or otherwise declare the Engine unserviceable.  There is no ambiguity

surrounding the meaning or scope of this "promise" in the instant context.[10]  As such, Defendant's Motion to Dismiss should be denied on this claim.

## IV.  ATTORNEY'S FEES

Finally, Defendant seeks to have Plaintiff's claim for attorney's fees stricken because Plaintiff failed to comply with the safe harbor provision contained in Florida Statute § 57.105; and, asserts that the claim is premature because no prevailing party has yet been determined and Defendant has not raised any claims in defense to the action yet (DE # 7 at 10-11).  In response, Plaintiff states that the attorney's fees claim was properly made when the case was pending in Florida State Court but, due to removal from State Court, is now subject to Federal Court Rules (DE # 20 at 22).  Plaintiff further asserts that it will accept the ruling of this Court on the issue but contends that it is not waiving any potential claims for fees and costs.  Thus, Plaintiff fails to address the substantive argument raised by Defendant that Plaintiff failed to adhere to the requirements of the safe harbor provision contained in Fla. Stat. § 57.105.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" within the pleadings.  Florida Statute § 57.105 authorizes the Court to award attorney's fees to a prevailing party as sanctions for raising unsupported claims or defenses, and includes a safe harbor provision requiring the party seeking sanctions to allow twenty-one days for the challenged defense, contention, allegation, or denial to be withdrawn or appropriately corrected.

---

[10] This determination is not intended to affect the determination on the merits of Defendant's position at the summary judgment or trial stage of the proceedings.  Rather, it is simply a ruling that the Complaint survives a motion to dismiss.

Thus, because Defendant has not yet made any claim or defense in this case and no prevailing party has been determined, Plaintiff has not abided by the procedural safe harbor provision. Therefore, a claim for attorney's fees pursuant to Fla. Stat. § 57.105 is not appropriate at this time.  Accordingly, the Motion to Strike the Plaintiff's Attorney's Fees Claim in the Amended Complaint should be granted, without prejudice to seek such fees at the appropriate time.  *See Gibson v. Monaco Coach Corp.*, 2006 WL 2092640 (M.D. Fla. July 27, 2006) (striking attorney's fee request pursuant to § 57.105 where safe harbor provision not followed because no claim or defense yet raised by defendant).

## V.  CONCLUSION

Therefore, based on the foregoing, it is hereby

**RECOMMENDED** that Defendant's Motion To Dismiss Counts I, II and III of Plaintiff's Amended Complaint (DE # 7), be **GRANTED**, in part, without prejudice as to Counts I and II, and **DENIED** as to Count III.  It is further recommended that Plaintiff be permitted to file a Second Amended Complaint to set forth factual allegations of fraud related to Count I, Negligent Misrepresentation and Count II, Fraudulent Inducement of Plaintiff's Amended Complaint.  It is further

**RECOMMENDED** that Defendant's Motion to Strike Plaintiff's Request for Attorney's Fees and Costs Pursuant to Fla. Stat. § 57.105 be **GRANTED**.

The parties will have fourteen days from the date of service of this Order within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149

(11th Cir. 1993).

       **DONE AND SUBMITTED** in chambers in Miami, Florida on January 13, 2011.


_Andrea M. Simonton_
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**


Copies provided via CM/ECF to:
The Honorable Joan A. Lenard, United States District Judge
All counsel of record